Cite as 2020 Ark. App. 86

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–19–504

| | | |
|---|---|---|
| | | **Opinion Delivered:** February 5, 2020 |
| TERRY LEE GILBRETH | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR–1576] |
| V. | | |
| | | HONORABLE JOANNA TAYLOR, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Terry Lee Gilbreth appeals after the Washington County Circuit Court revoked his suspended imposition of sentence (SIS) on the charge of possession of firearms by certain persons and sentenced him to serve 120 months' imprisonment. On appeal, appellant contends that (1) the trial court lacked jurisdiction to revoke his SIS; and (2) the trial court erred when it allowed testimony from the probation officer in violation of his right to confront witnesses. We affirm.

I. *Relevant Facts*

Appellant entered a negotiated plea of guilty to possession of firearms by certain persons and endangering the welfare of a minor in the first degree. The October 13, 2015, sentencing order reflects that appellant was sentenced to serve 120 months' imprisonment and 120 months' SIS for the charge of possession of firearms by certain persons. He was additionally sentenced to serve 72 months' imprisonment for the charge of endangering the welfare of a minor in the

first degree. The sentencing order noted that appellant's SIS was "conditioned upon Defendant paying fees as ordered, remaining on good behavior [and] committing no new violations of the law."

Thereafter, the State filed a motion for revocation of appellant's SIS on November 6, 2017. However, after a hearing, the trial court dismissed the motion for revocation as reflected in an April 27, 2018, sentencing order. The sentencing order further stated that "[d]efendant [was] to comply with all orders of parole officers, defendant to comply with all laws and all orders of the court and remain on good behavior [and] pay costs [and] fees as ordered."

On October 23, 2018, the State filed a second motion for revocation of appellant's SIS and an amended motion for revocation of his SIS on March 25, 2019. The State alleged that

> [t]he Defendant is in violation of his suspended sentence when he committed the offenses Aggravated Assault on a Family or Household Member and Domestic Battery in the 3rd Degree, failed to comply with the orders of his supervising parole officer, failed to report, failed to attend substance abuse classes, and failed to pay his court ordered obligations.

A revocation hearing was held on March 28, 2019.

At the hearing, certified copies of appellant's sentencing orders and payment history were admitted into evidence without objection. Officer John Harris testified that he responded to a domestic disturbance involving appellant on September 12, 2018. He discovered that appellant had attempted to run down his girlfriend, Marketta Dixon, with a car as well as use a stick to try to hit her on the head. At the scene, Officer Harris spoke with Ms. Dixon and Ricky Dillon, who had placed the call to law enforcement. Ms. Dixon seemed scared and was sweating profusely as if she had been in some sort of physical altercation. The fronts of her knees had mud and scrapes on them. She also had redness and fresh scrapes and cuts around her neck and chest area. Officer Harris submitted photographs of her injuries, which were also

2

entered into evidence without objection. After Officer Harris apprehended appellant and read appellant his *Miranda* warnings, appellant admitted that he had gotten into an argument with Ms. Dixon and that Ms. Dixon got in front of his car. He also admitted that he had picked up a stick at one point but claimed that he did so in self-defense.

Mr. Dillon testified that he called law enforcement after he heard a lot of yelling. He saw Ms. Dixon and appellant arguing. He stated that at one point, he saw appellant get into a car and chase Ms. Dixon around, trying to hit her. Mr. Dillon opined that if it had not been for the trees and a pile of wood, appellant would have hit her. Mr. Dillon additionally observed appellant throw Ms. Dixon to the ground and appear to hit her after he got out of the car.

Molly Ruth Elders testified that she had served as appellant's probation officer for the last couple of months when he was added to her caseload. Officer Elders explained that Officer Rose Rojas had supervised appellant for the majority of appellant's supervision period. However, Officer Rojas no longer worked for the agency and instead worked for Homeland Security. Officer Elders explained that she had extensively reviewed appellant's file, including all the electronic records documenting appellant's chronological history and information documented by appellant's previous supervising officers. Officer Elders testified that she personally conducted a home visit when she was assigned the case after appellant had failed to report to Officer Rojas as required on July 23, 2018. However, she was unable to locate appellant. According to her notes, the last time appellant had reported was on June 27, 2018. Although appellant objected on the ground that it violated his right to confront witnesses to allow Officer Elders to testify regarding anything reflected in her notes that she did not have personal knowledge of, the trial court overruled the objection and stated that the documents were relied on by Officer Elders in conducting her job duties.

Lori Ogden, appellant's sister, testified on appellant's behalf. She explained that appellant has struggled with drug use. Ms. Ogden opined that appellant had finally accepted the fact that he had a drug problem and needed help and treatment. Brian Stockslinger, appellant's friend and the jail minister, echoed Ms. Ogden's testimony. Mr. Stockslinger testified that appellant seemed eager to get help and change his behaviors. Therefore, he requested that appellant be given another chance to receive treatment.

After hearing all the evidence, the trial court found appellant in violation of his SIS for failing to report, failing to attend substance-abuse classes, and failing to remain on good behavior by committing new offenses. He was sentenced to serve 120 months' imprisonment. This appeal followed.

## II. *Lack-of-Jurisdiction Arguments*

Appellant argues that the trial court lacked subject-matter jurisdiction to revoke his SIS in that the trial court failed to follow the mandatory requirements of Arkansas Code Annotated section 5–4–303 (Supp. 2019). We disagree.

Section 5–4–303 provides the following in relevant part:

> (a) If a court suspends imposition of sentence on a defendant or places him or her on probation, the court shall attach such conditions as are reasonably necessary to assist the defendant in leading a law-abiding life.

> (b) The court shall provide as an express condition of every suspension or probation that the defendant not commit an offense punishable by imprisonment during the period of suspension or probation.

> . . . .

> (e) If the court suspends imposition of sentence on a defendant or places him or her on probation, the court shall:

> . . . .

4

(2) Give the defendant a written statement explicitly setting forth the conditions under which he or she is being released.

As a general rule, criminal statutes are strictly construed with any doubts resolved in favor of the accused. *Geeslin v. State*, 2017 Ark. App. 571, 533 S.W.3d 132.

First, to the extent appellant argues that he failed to receive a written statement explicitly setting forth the conditions under which he was being released as mandated by statute, he failed to preserve this argument for our review. Although the statute requires a written statement be given to a defendant, there is no requirement that a defendant must sign a written acknowledgment when he or she receives a written statement of conditions or that one be introduced at the revocation hearing. *Id.* The reason for the statutory requirement to give a defendant conditions in writing is to avoid any misunderstanding. *Nelson v. State*, 84 Ark. App. 373, 141 S.W.3d 900 (2004). This requirement comports with due process; otherwise, the trial courts have no power to imply and then later revoke on conditions that were not expressly communicated in writing to the defendant. *Id.* However, this is not an issue of jurisdiction that can be raised at any time; it is instead a procedural issue that is waived by appellant's failure to raise it to the trial court. *Id.* Here, because appellant did not object on this basis at his revocation hearing, his arguments are simply not preserved for appeal. *Myers v. State*, 2014 Ark. App. 720, 451 S.W.3d 588.

Next, appellant argues that the October 13, 2015, and April 27, 2018, sentencing orders contained errors that deprived the trial court of its jurisdiction. Regarding the October 13, 2015, sentencing order, appellant argues that the order was ambiguous as to whether appellant was placed on SIS, that the trial court failed to check the correct legal-statement box stating that it would retain jurisdiction to revoke appellant's SIS, and that the "additional info" section

5

specifying the conditions of appellant's SIS was invalid because it failed to track the language of the statute verbatim.  Regarding the April 27, 2018, sentencing order, appellant argues that the order did not merely dismiss the revocation petition but was instead a dismissal of his prior conviction for the offense of possession of firearms by certain persons.  However, appellant fails to cite any cases that directly support his assertions, and his arguments lack merit.

Judgments are generally construed in the same manner as other instruments, and the determinative factor is the intention of the court, which is derived from the judgment and the record.  *Kendrick v. State*, 2013 Ark. App. 716.  It is to be presumed that a defendant has been accorded a fair trial and that the judgment of conviction is valid.  *Id.*  Clerical errors do not prevent enforcement of a judgment.  *Id.*  In *Kendrick*, the defendant argued that the trial court failed to enter a proper judgment because it neglected to check one of the boxes under the legal-statements section indicating the circumstances under which judgment was entered against him.  We disagreed and held that it was clear from reading the sentencing orders that the trial court entered a judgment against Kendrick, and a clerical error did not make the judgment entered improper.  *Id.*

Here, the October 13, 2015, order listed several offenses.  For the offense at issue in this case, the trial court specifically noted that appellant entered a negotiated plea of guilty and that it was imposing 120 months' imprisonment and 120 months' SIS.  Moreover, the "Additional Info" section specifically noted that appellant's SIS was "conditioned upon Defendant paying fees as ordered, remaining on good behavior [and] committing no new violations of the law."  On the April 27, 2018, sentencing order, the trial court checked the boxes that it was addressing an "SIS Revocation" and that the "Offense was Dismissed."  It further noted under the "Additional Info" section, "Defendant [was] to comply with all orders of parole officers,

6

defendant to comply with all laws and all orders of the court and remain on good behavior [and] pay costs [and] fees as ordered." It is clear to us that the trial court's intent in these orders was to impose 120 months' SIS in addition to 120 months' imprisonment and that it had dismissed the first revocation petition, continuing appellant's SIS subject to the conditions stated in the "Additional Info" section. Thus, the trial court retained subject-matter jurisdiction to revoke appellant's SIS, and we affirm.

III. *Confrontation-Clause Argument*

Finally, appellant argues that the trial court erred when it allowed Officer Elders to testify over his objection to information gained from former probation officers that was contained in her case file and outside her personal knowledge in violation of his right to confront witnesses. However, as the State correctly notes, even if we were to assume error, any error would be harmless.

Our appellate courts have repeatedly held that trial error involving the Sixth Amendment right to confront adverse witnesses is subject to a harmless-error analysis. *Roston v. State*, 362 Ark. 408, 208 S.W.3d 759 (2005); *Ryan v. State*, 2016 Ark. App. 105, 484 S.W.3d 689. Whether a confrontation-clause violation is harmless error depends on a variety of factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Roston*, 362 Ark. at 410, 208 S.W.3d at 760 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

In a revocation proceeding, the trial court must find by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension or

7

probation, and on appellate review, we do not reverse the trial court's decision unless it is clearly against the preponderance of the evidence. *Flemons v. State*, 2014 Ark. App. 131; Ark. Code Ann. § 16-93-308(d) (Supp. 2019). Because the burdens are different, evidence that is insufficient for a criminal conviction may be sufficient for a probation or suspended-sentence revocation. *Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002). Since determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the trial court's superior position. *Id.* Furthermore, the State need only prove that the appellant committed one violation of the conditions in order to revoke appellant's sentence. *Peals v. State*, 2015 Ark. App. 1, 453 S.W.3d 151. In *Ryan*, we held that a confrontation error was harmless because there was other evidence that supported the revocation, rendering the out-of-court statements unnecessary, and the same is true here. *Ryan*, *supra*.

In addition to the other violations based on Ms. Elders's testimony, the trial court found that appellant had violated the terms of his SIS by failing to remain on good behavior and committing new offenses. On this point, the trial court heard testimony from Officer Harris and Mr. Dillion. Officer Harris testified that he responded to a domestic disturbance involving appellant and Ms. Dixon on September 12, 2018. He testified that his investigation revealed that appellant had attempted to run down Ms. Dixon with a car as well as use a stick to try to hit her on the head. He took pictures of Ms. Dixon's injuries, and appellant admitted to him that he had picked up a stick to strike Ms. Dixon. Mr. Dillon, a nearby neighbor, testified that he called law enforcement after he heard a lot of yelling. He saw Ms. Dixon and appellant arguing; saw appellant get into a car and chase Ms. Dixon; and opined that if it had not been for the trees and a pile of wood, appellant would have hit her. Moreover, Mr. Dillon observed

appellant throw Ms. Dixon to the ground and appear to hit her after he got out of the car. Even excluding Officer Elders's testimony, there was sufficient evidence to support revoking appellant's SIS for failing to remain on good behavior and committing new offenses, which would render any error harmless in light of the remaining evidence. *See Roston, supra.* As such, we affirm.

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*Hancock Law Firm*, by: *Charles D. Hancock*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.