Cite as 2025 Ark. App. 98

# ARKANSAS COURT OF APPEALS
## DIVISIONS III & IV
### No. CR-24-264

| | |
|---|---|
| CHRISTOPHER CONDUFF<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 19, 2025<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NOS. 04CR-19-2172, 04CR-22-984, AND 04CR-22-1527]<br><br>HONORABLE BRAD KARREN, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**ROBERT J. GLADWIN, Judge**

Appellant Christopher Conduff appeals the revocation of his probationary sentences in three separate cases by the Benton County Circuit Court. He challenges the sufficiency of the evidence supporting the revocations and argues that the circuit court erred in refusing to grant him 615 days of preconviction jail-time credit to which he was entitled. We affirm and remand to the circuit court to correct errors in the sentencing order.

## I. *Facts and Procedural History*

In 2019, Conduff was charged with unlawful possession of a firearm, possession of drug paraphernalia, and terroristic threatening in Benton County Circuit Court case number 04CR-19-2172. Conduff subsequently was charged with delivery of methamphetamine and introduction of a controlled substance into another person in case

number 04CR-22-984 as well as stalking in case number 04CR-22-1527. He pleaded guilty to all these charges on September 26, 2023.

The plea agreements filed on September 26—as well as the combined sentencing order filed on October 16—in all three cases note that Conduff had 615 days of jail-time credit. Conduff was sentenced to 120 days in jail as a condition of his six years' probation for the three offenses in 04CR-19-2172. He was ordered to serve the same jail term as a condition of his ten years' probation for his other crimes in 04CR-22-984 and 04CR-22-1527, and he was credited a total of "615 days" for time already served toward this condition of his probation. The terms and conditions of Conduff's probation also required that he report as directed by his supervising probation officer; be "gainfully employed"; and, if instructed to undergo any rehabilitative program, provide "proof of compliance" to his probation officer.

The State filed the initial petitions to revoke Conduff's probation in all three cases on November 20, alleging that he had failed to report to his probation officer and that his whereabouts were unknown. The State filed amended revocation petitions in all three cases on December 27, which specified, in part, that Conduff had inexcusably violated the conditions of his probation by not reporting as directed to Colorado Probation and Parole ("CPP") on November 15, 2023, in violation of condition number 7, and by failing to provide proof of his employment in violation of condition number 11.

At the revocation hearing held on January 2, 2024, the circuit court took judicial notice of the terms and conditions of Conduff's probation and considered the following evidence.

Probation officer Rylie Hickman testified she had been Conduff's supervising officer in Benton County since October 2023. Hickman testified that she reviewed the written conditions of probation with Conduff when he was released from custody on October 2 at his intake meeting. Hickman explained that at this meeting, Conduff told her that he wanted to transfer the supervision of his probation to Colorado, where he allegedly lived. Hickman testified that Conduff "was ordered to report weekly by phone" to the Benton County probation office for instructions related to his request to transfer supervision. Hickman further testifed that despite this being a "lined-out" condition of his probation, Conduff did not contact her as arranged following his intake meeting, and that Conduff was later arrested in Arkansas in December 2023. Hickman also testified that Conduff was never employed after the imposition of his probation, and when asked whether Conduff had provided any proof of employment, she answered no.

Probation officer Paul Clark testified that he supervises interstate transfers of probation supervision for the Benton County probation office. Clark stated that he met with Conduff on October 2 to process the transfer of Conduff's probation supervision to Colorado. Clark testified that Conduff completed an application for his probation to be transferred to Colorado and provided a contact address and phone numbers there. Clark testified that Conduff's transfer request was initially approved by CPP on October 5. Clark explained that while that approval authorized Conduff to reside in Colorado, the final approval of Conduff's probation transfer required that he first report to CPP.

Officer Clark testified that he learned that CPP ultimately denied Conduff's transfer request because he had "failed to arrive" by November 15. On November 9, when Benton County probation officers were unable to directly contact Conduff, they left multiple messages at the phone numbers Conduff had provided advising Conduff to report to CPP by November 15. Clark further testified that officers also were unable to contact Conduff at his alleged residence in Colorado, and when asked why Conduff's transfer request was denied, Clark confirmed that "he didn't contact [CPP] as directed[.]"

After the State rested and Conduff presented no evidence in his defense, the circuit court revoked Conduff's probation in all three cases, determining that Conduff had inexcusably failed to report as directed to CPP by November 15, 2023, in violation of condition number 7 and had not complied with the employment condition of his probation in violation of condition number 11.

Conduff testified during the sentencing phase that he had been employed as a local contractor for Grandmaster Craftsman, working seven days a week, from two days after his release up until his rearrest. Conduff also testified that he reported this information to his supervising officer. The circuit court found Conduff's testimony not credible and sentenced him to four years' imprisonment; suspended imposition of his remaining sentences for a period of one year for each of his underlying crimes in 04CR-19-2172, 04CR-22-984, and 04CR-22-1527; and credited him the thirty-two days spent in jail after the revocation petitions were filed.

4

The circuit court entered a combined sentencing order on January 5 noting thirty-two days of jail credit.[1] Conduff filed motions seeking additional jail credit on January 9, citing *Polston v. State*, 2020 Ark. App. 530, and arguing that he was entitled to a total of 527 days of jail-time credit toward his new sentences pursuant to Arkansas Code Annotated section 5-4-404 (Repl. 2024). The State responded, asserting that Conduff's pretrial detention had been credited toward the 120-day sentences imposed as a condition of his probation for his 2023 pleas and that he was not entitled to any additional jail-time credit under Arkansas law.

The circuit court denied Conduff's motions following a hearing on January 25. The circuit court noted that Conduff's sentence to serve 120 days in jail was based on his 2023 pleas, and it credited the 615 days spent in jail prior to his pleas toward these sentences. The circuit court ruled that the former jail-time credit would not be applied toward the sentences for Conduff's later probation violations. The circuit court entered amended sentencing orders in all three cases on January 29, still noting thirty-two days of jail-time credit. Conduff filed timely notices of appeal in all three cases on January 31.

II. *Standard of Review and Applicable Law*

In order to revoke a probationary sentence, a circuit court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of his

---

[1]On December 1, 2023, Conduff was arrested on the revocation warrant. On January 2, 2024, by order of the circuit court, he was sentenced to forty-eight months in the Arkansas Division of Correction. The thirty-two days of jail time matches the window of time between December 1, 2023, and January 2, 2024.

5

probation. Ark. Code Ann. § 16-93-308(d) (Supp. 2023). Arkansas Code Annotated section 5-4-303(e)(2) (Repl. 2024) provides that when probation is imposed, defendants shall be given a written statement explicitly setting forth the conditions under which they are being released. The purpose of this written notice requirement is to assist a defendant in leading a law-abiding life, *see* section 5-4-303(a), and to avoid any misunderstanding that a violation of the conditions of probation may result in its revocation. *E.g.*, *Gilbreth v. State*, 2020 Ark. App. 86, at 6, 596 S.W.3d 29, 33.

The State must prove by a preponderance of the evidence that a defendant received written notice of a condition under section 5-4-303(e)(2) and similarly need only prove one violation of the conditions of probation. *E.g.*, *Geeslin v. State*, 2017 Ark. App. 571, at 5–6, 533 S.W.3d 132, 135–36. The State's burden of proof is less than is required to convict in a criminal trial, and evidence that is insufficient to convict may still support revocation. *E.g.*, *Goad v. State*, 2021 Ark. App. 483, at 4, 636 S.W.3d 401, 403. On appeal, this court will affirm a circuit court's revocation unless the decision is clearly erroneous or clearly against the preponderance of the evidence. *Id.* When considering sufficiency challenges, this court defers to the superior position of the circuit court to determine the credibility of witnesses, and a circuit court is not required to believe a defendant's self-serving testimony at revocation. *Id.*

III. *Discussion*

A. Sufficiency of the Evidence

1. *Condition number 7–failure to report*

Conduff submits that reporting to the CPP office as directed on November 15, 2023, was not a condition of his probation that was expressly communicated to him in writing. He notes that none of the terms and conditions of his probation required him to report to any particular place on any particular date, and he claims that the State presented no proof that he was ever required to report on November 15, 2023, in Colorado as a condition of his probation. Accordingly, he maintains that the circuit court improperly implied and then later revoked on a condition not expressly communicated in writing to him. *See, e.g., Ball v. State*, 2021 Ark. App. 209, 624 S.W.3d 111.

Conduff maintains that the only evidence presented was that Colorado rejected his request for an interstate transfer on November 15, 2023, when officers there were unable to contact him. He asserts there simply was no proof that he was directed to report on November 15, 2023, in Colorado and that he failed to report as directed.

We disagree. The record before us establishes that condition 7 of Conduff's terms and conditions of probation provide that he "must report as directed" by his supervising probation office, which he does not contest was the Benton County Probation Office. Officer Hickman testified that she advised Conduff of this condition of his probation at his intake meeting. Moreover, Officer Clark also testified that he specifically instructed Conduff to report to CPP to complete the transfer of his supervision to Colorado and that phone messages were left at the contact phone numbers he provided advising him to report to CPP by November 15, 2023.

7

Although Conduff argues that the absence of a written condition specifying that he was to report to CPP by that date was insufficient notice pursuant to section 5-4-303(e)(2), it is undisputed that Conduff's probation was expressly conditioned on his reporting as directed by the Benton County Probation Office. The messages left on his phone directing him to report to CPP by November 15, 2023, and his failure to do so, establish that he inexcusably violated this express condition of his probation. *See, e.g., Chambers v. State*, 2018 Ark. App. 69, at 1–4, 540 S.W.3d 316, 316–318 (affirming revocation after probationer was advised via voicemail and failed to report as directed).

Conduff's assertion that he lacked notice because the written conditions did not specify the date on which he was directed to report to CPP is meritless. *See Butry-Weston v. State*, 2021 Ark. App. 51, at 7–8, 616 S.W.3d 685, 690 (holding the reversal of revocation was unwarranted because the terms and conditions failed to specify the date by which defendant was to report to probation). Moreover, in contrast to *Ball, supra*, the circuit court's revocation was not premised on a condition not specified in the terms and conditions of Conduff's probation. *Compare Butry-Weston*, 2021 Ark. App. 51, at 4–5, 616 S.W.3d at 688, *with Ball*, 2021 Ark. App. 209, at 1–3, 624 S.W.3d at 112–13.

### 2. *Condition number 11—proof of employment*

Conduff also argues that providing proof of employment was not a condition of his probation, so any purported failure to do so cannot be the basis for a revocation. He claims that his conditions of probation related to employment required him only to (1) allow a supervising officer to visit him at his place of employment; (2) be gainfully employed or

enrolled as a student at all times; (3) notify his supervising officer in advance of any change in employment; and (4) obtain prior approval from a supervising officer before quitting his employment.

Conduff notes that the only testimony at the revocation hearing was that he did not provide proof of employment to his supervising officer in Arkansas. Conduff asserts that even if this were true, this was not a violation of any of his conditions and cannot support a revocation of his probation. He urges that even if the conditions can be read to require him to report his employment, there was no condition requiring that he provide proof of such. He maintains that the circuit court improperly implied and then revoked on the basis of a condition that was never communicated in writing. *See Gilbreth*, *supra*.

Officer Hickman testified that Conduff was never employed while under her supervision and that he never provided proof of employment, despite the fact that condition 11 required him to be gainfully employed or enrolled as a student at all times. Although Conduff argues that this written condition did not include a provision requiring proof of his employment status, we hold that it is inherent—not implied, as was the relevant condition in *Ross v. State*, 268 Ark. 189, 594 S.W.2d 852 (1980)—in the requirement that he be employed that he provide at least some evidence of it. Moreover, Conduff even acknowledges cases in which Arkansas circuit courts have imposed similar conditions explicitly requiring a probationer to provide proof of employment. *See, e.g.*, *Henderson v. State*, 2017 Ark. App 486, at 1 (probation conditioned on Henderson's being gainfully employed and that he report any changes in his address or employment status); *Warbritton v. State*, 2020 Ark. App. 441,

at 2 (signed conditions of suspended sentence or probation required Warbritton to notify her probation officer in advance of any change of address or employment).

## B. Denial of Conduff's Request to Add Pretrial Jail Credit

Conduff submits that he spent 615 days in jail before originally being placed on probation in the three cases at issue in this case. He claims that the circuit court erred by denying him this credit upon the revocation of those three probationary sentences despite being expressly asked to do so and after being presented with authority making clear that he was entitled to it. He argues that we must correct the circuit court's error and correct his sentencing order to reflect these additional 615 days of pretrial jail-time credit against his sentence.

Arkansas Code Annotated section 5-4-404 states:

> If a defendant is held in custody for conduct that results in a sentence to imprisonment or confinement as a condition of suspension or probation, the court, the Division of Correction, or the Division of Community Correction shall credit the time spent in custody against the sentence, including time spent in a local jail facility awaiting transfer to the Division of Correction or the Division of Community Correction.

Pursuant to this statute, a defendant is entitled to receive jail-time credit on a revoked probation for the time the defendant spent in custody awaiting trial on the charge that resulted in the probation. *See Boone v. State*, 270 Ark. 83, 85 603 S.W.2d 410, 412 (1980) (holding that appellant should have received credit on his suspended sentence for the 114 days he spent in custody awaiting trial on the 1978 charge that resulted in the five-year suspended sentence).

10

This court reaffirmed the above principle in *Polston v. State*:

> Polston was held in custody for 228 days on the drug charge to which he eventually pleaded guilty and was placed on probation. When Polston's probation was subsequently revoked and he was sentenced to a term of imprisonment, Polston was entitled to credit for these 228 days spent in custody. *See Boone*, *supra*. As found by the trial court, Polston was also entitled to credit for the 4 days he spent in custody on the revocation warrant. This totals 232 days that Polston was jailed and that should have been included in the jail-time-credit calculation.

2020 Ark. App. 530, at 5.

On September 26, 2023, Conduff pleaded guilty to charges of first-degree stalking in case number 04CR-22-1527; introduction of a controlled substance and delivery of methamphetamine or cocaine in case number 04CR-22-984; and possession of a firearm by certain persons, first-degree terroristic threatening, and possession of drug paraphernalia in case number 04CR-19-2172. He was sentenced to a total of ten years of probation across all counts pursuant to the plea agreements filed on September 26 and resulting combined sentencing order filed on October 16. Conduff notes that the sentencing order states that Conduff had 615 days of jail-time credit. As such, Conduff maintains he was entitled to these 615 days of credit against his revocation sentences pursuant to *Polston*, *supra*, and *Boone*, *supra*.

Conduff requests that this court reverse and dismiss his revocation or, alternatively, reverse the circuit court and correct his sentencing order to add his 615 days of preconviction jail-time credit and for any and all proper relief to which he is entitled.

As a preliminary matter, we decline to reverse because the record is inadequate to determine the amount of pretrial detention he served for each of his six underlying offenses

11

before entering his guilty pleas in 2023. *See, e.g., Furlow v. State*, 2023 Ark. App. 192, at 15, 664 S.W.3d 457, 467 (holding it is an appellant's burden to file a sufficient record enabling review of a jail-time-credit claim). But even as it stands now, the record before us shows that Conduff is not entitled 615 days' jail-time credit toward each of his sentences.

Section 5-4-404 generally provides that a defendant held in custody for conduct that results in a sentence of imprisonment or confinement as a condition of probation shall be credited the time spent in custody against the sentence. Although the statute does not address how jail-time credit should be allocated among multiple convictions, our supreme court has held that jail credit is "not appropriate when the incarceration is due wholly to unrelated charges that are based on conduct other than that for which the defendant is sentenced." *Bailey v. State*, 2019 Ark. App. 53, at 4, 571 S.W.3d 21, 23 (quoting *Humphrey v. State*, 300 Ark. 383, 384, 779 S.W.2d 530, 531 (1989)). This court similarly has held that the cause of a defendant's confinement must be related to the offense for which he receives jail credit. *E.g., Moore v. State*, 2022 Ark. App. 185, at 6, 644 S.W.3d 448, 451.

Although Conduff maintains that he is entitled to a total of 615 days in jail credit accruing before September 26, 2023, other than what was reflected in his initial sentencing order, he cites nothing in the record that supports his contention that he served that amount of time in jail for each of the six separate offenses to which he pleaded guilty in 2023.

In case number 04CR-19-2172, the record shows that Conduff was arrested for unlawful possession of a firearm, possession of drug paraphernalia, and terroristic threatening on August 28, 2019. After he was arraigned and pleaded not guilty in that case,

Conduff was released from custody on these charges when he posted a "cash bond" on July 17, 2020. Conduff subsequently was arrested after he failed to appear for a scheduled omnibus hearing in that case on November 16, 2022. Conduff provides no authority to support his allegation that he was entitled to jail-time credit for confinement on his failure-to-appear arrest. Thus, he was confined a total of only 325 days before he pleaded guilty to unlawful possession of a firearm, possession of drug paraphernalia, and terroristic threatening in case number 04CR-19-2172 on September 26, 2023.

Similarly, Conduff pleaded guilty to separate counts of delivery of methamphetamine and introduction of a controlled substance into another person in case number 04CR-22-984 on September 26, 2023. As his plea confirmed, Conduff committed these offenses on October 31, 2021, and the record shows he was arrested on these two charges on May 18, 2022. On May 28, 2022, Conduff posted bail in 04CR-22-984, later failed to appear in this proceeding on November 16, 2022, and was taken into custody on March 16, 2023, on the bench warrant issued the day he failed to appear. The record reflects that Conduff spent a total of eleven days in jail for the offenses charged in 04CR-22-984 before he pleaded guilty to these offenses on September 26, 2023—for which he had been arrested only 497 days earlier.

Conduff is also not entitled to 615 days' jail credit in case number 04CR-22-1527. In that case, Conduff was charged with first-degree stalking and arrested for this offense on July 23, 2022. While the record is unclear when he was released from pretrial detention on this charge, it is undisputed that Conduff was out of custody when he failed to appear for an

omnibus hearing scheduled in this case on November 16, 2022. Thereafter, the record shows that Conduff remained in custody solely on the failure-to-appear warrant issued in November 2022 before he pleaded guilty to first-degree stalking on September 26, 2023. Accordingly, it is impossible that Conduff was confined in jail for a total of 615 days for this crime as of the day he pleaded guilty on September 26, 2023, when he committed the offense on July 23, 2022. And, as previously set out, Conduff is not entitled to aggregate the total time served in jail for wholly unrelated charges or for his failure to appear in each of his underlying cases prior to his 2023 pleas.

Moreover, not only is Conduff's calculation of jail-time credit as of the plea date of September 26, 2023, mistaken, but his argument also fails to account for the fact that, on that date, he was ordered to serve 120 days' incarceration as a condition of each probationary sentence. *See* Ark. Code Ann. § 5-4-304(c)(1)(A)(i) (Supp. 2023). However, the record shows that he did not actually serve those 120 days because he received credit for time already served.

It is the appellant's burden to file a sufficient record enabling the review of a jail-time-credit claim, *see, e.g., Furlow, supra*, and it is not the duty of this court to make an appellant's arguments for him or her. *McDaniels v. State*, 2012 Ark. App. 219, at 3. Because we hold that the record supports the circuit court's findings that Conduff did inexcusably violate the terms and conditions of his probation, and because Conduff failed to provide this court with a record sufficient to enable our determinative review of his jail-time-credit claim, we affirm. Notwithstanding, we note that among the errors in the sentencing order is the incorrect

14

notation that Conduff is sentenced to forty-eight months in the county jail. Accordingly, we remand to the circuit court with instructions to correct the sentencing order.

Affirmed; remanded to correct the sentencing order.

ABRAMSON, WOOD, and BROWN, JJ., agree.

TUCKER and THYER, JJ., dissent.

**CINDY GRACE THYER, Judge, dissenting**. The majority in this case correctly maintains that, under Arkansas law, a defendant is entitled to receive jail-time credit on a revoked probation for time spent in custody awaiting trial on the charge that resulted in the probation. *See Boone v. State*, 270 Ark. 83, 603 S.W.2d 410 (1980); *Polston v. State*, 2020 Ark. App. 530. However, while I agree with the majority that Conduff's jail-time-credit calculation is incorrect, I disagree with its conclusion that the dispute over Conduff's calculation of the credit should serve to deprive him of any of the credit for which he is legally entitled. This is especially true when his argument is grounded on a prior sentencing order—signed by a judge and approved by the prosecuting attorney—that clearly awards him jail-time credit. Our role as an appellate court is not to make the calculation—we are not fact-finders; instead, the matter should be remanded to the circuit court to make the calculation it should have made in the first instance.[1]

---

[1]I note that had the circuit court or the prosecutor sorted through the jail-time-credit issue in the original sentencing order as the majority has attempted to do here, there would be no need for a remand. Having failed to calculate the days initially, the State would have us simply look away; and the majority, by affirming the circuit court, rewards that inaction for a second time.

Further, I do not believe, as the majority contends, that by remanding for the calculation of jail-time credit, we would be making Conduff's argument for him. Conduff has argued on appeal that he is legally entitled to preprobation jail-time credit. That is the issue before us, and even the majority agrees that Conduff is legally entitled to his preprobation jail-time credit. We would simply be remanding for the fact-finder to make the appropriate calculations. The bottom line here is that Conduff is entitled to his preprobation jail-time credit; he requested that the circuit court give him credit for that time; the circuit court refused to do so; he asked this court to award him jail-time credit; and now we have likewise denied him that to which he is legally entitled. That is neither equity nor justice.

For these reasons, I dissent.

TUCKER, J., joins.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.